IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACACIA CORPORATE MANAGEMENT, LLC, MICHAEL IOANE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES, et al.,<br><br>Defendants. | CIV F-07-1129 AWI GSA<br><br>ORDER RE: MOTIONS FOR JUDGMENT ON THE PLEADINGS , TO STRIKE, AND FOR PARTIAL FINAL JUDGMENT UNDER FED. R. CIV. PROC. 54(b)<br><br><br>(Docs. 37, 39, and 40) |

## I. History[1]

Steven and Louise Booth (the "Booths") owe Defendant United States over $2 million dollars in tax deficiencies and penalties dating from activity in 1995-97. The Booths owned (or controlled through other entities) three parcels of property (the "Properties") in Bakersfield, CA. On December 5, 2005, the Booths transferred ownership of the Properties to Plaintiffs Acacia Corporate Management and Michael Scott Ioane. Bakersfield Properties and Trust Company, Alpha Omega Trust, and Aligned Enterprises Trust ("Lienholders") have lien and/or mortgage interests in the Properties. On December 22, 2005, the United States put a tax lien on the Properties on the basis that Plaintiffs and Lienholders are nominees/alter egos of the Booths.

On August 3, 2007, Plaintiffs filed suit against the United States, the Booths, and the Lienholders to quiet title to the Properties and seeking monetary, declaratory, and injunctive

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

relief against the United States. Defendant United States filed an answer and filed a motion for judgment on the pleadings. By order of January 22, 2008, the court granted the motion in part and denied the motion in part, limiting Plaintiffs' suit to one seeking to quiet title on the Properties pursuant to 28 U.S.C. §2410. Doc. 64. On February 6, 2008, Plaintiffs voluntarily dismissed claims against the Booths and Lienholders under Fed. R. Civ. Proc. 41(a). Doc. 66. The only remaining defendant in this case is the United States.

On March 31, 2008, Defendant filed a motion to stay this case for six months, requesting that "thereafter the United States be required to submit a written status report explaining the current status of the criminal investigation." Doc. 70, Part 2, Defendant's Brief, at 2 fn.1. Plaintiffs filed a limited opposition, stating, "Plaintiffs really have no need for discovery in this matter. Thus, if this court wants to stay the discovery pending the outcome of the phantom criminal investigation...Plaintiffs do not object. On the other hand, Plaintiffs both object that the entire proceedings be stayed in the interest of the principles of equity and fairness. Plaintiffs should be allowed to proceed in this action with dispositive motions based on the information which is already available to both parties." Doc. 75, Plaintiffs' Opposition, at 11:7-14. In response, Defendant argues that "any motion for summary judgment submitted now would require the United States to submit factual information that goes beyond the public record. The steps the United States would be required to take to respond to a summary judgment motion would likely force disclosure of information that could interfere with the criminal investigation." Doc. 79, Defendant's Reply, at 5:3-6. Defendant also received permission to file a declaration, ex parte and sealed, explaining the entanglement between this civil case and the criminal investigation. Doc. 72. The matter was taken under submission without oral argument. This order analyzes both a complete stay of the case and a more limited stay prohibiting discovery.

## II. Legal Standards

While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution....A court must decide

whether to stay civil proceedings in the face of parallel criminal proceedings in light of the particular circumstances and competing interests involved in the case. Obviously a court should consider the extent to which the defendant's fifth amendment rights are implicated. Other factors a court should consider will vary according to the case itself, but generally will include: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902-3 (9th Cir. 1989). In Molinaro, the private party (defendant) sought a stay in the civil suit brought by a governmental agency (plaintiff) for fear that the discovery process would force defendant to choose between his Fifth Amendment rights and his civil defense. The case at hand presents the reverse position of a government seeking a stay to prevent privileged information in a criminal case from being exposed during discovery. The Third Circuit has found the situations so different that it termed the case law of one "not relevant" to the other. De Vita v. Sills, 422 F.2d 1172, 1181 (3rd Cir. 1970). Nevertheless, courts within the Ninth Circuit have applied the Molinaro factors when considering a government's request for a stay. See Belford Strategic Inv. Fund, LLC v. United States, 2005 U.S. Dist. LEXIS 45219, *3-4 (N.D. Cal., Nov. 7, 2005) ("[Molinaro] holdings have little direct application in the present context, but the factors enumerated by the court are instructive"); De Felice v. Chugach Maint. Servs., 2007 U.S. Dist. LEXIS 84696, *2-3 (E.D. Cal., Oct. 29, 2007); Douglas v. United States, 2006 U.S. Dist. LEXIS 52754, *9-11 (N.D. Cal., July 17, 2006); Bureerong v. Uvawas, 167 F.R.D. 83, 87 (C.D. Cal. 1996). Importantly, "[t]he case for staying civil proceedings is 'a far weaker one' when 'no indictment has been returned[, and] no Fifth Amendment privilege is threatened.'" Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 903 (9th Cir. 1989), quoting SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980).

///

### III. Discussion

Defendant accuses Plaintiff Ioane and the Booths of committing tax evasion by fraudulently transferring the Properties to Plaintiff Acacia. Doc 70, Part 2, Defendant's Brief, at 2:19-21 and 3:14-16. Defendant further states that a grand jury has been empaneled to investigate. Doc. 70, Part 2, Defendant's Brief, at 2:3. This suit seeks to quiet title on the Properties. There is substantial overlap in the subject matter of the criminal investigation and this suit.

**A. Plaintiffs' Interests**

Plaintiffs state, "given the property rights at stake in this case, the court is compelled to exercise its equitable jurisdiction and not allow the government to endlessly cloud title to the Plaintiffs' property." Doc. 75, Plaintiffs' Opposition, at 3:7-9. Plaintiffs' interest in this case is founded on their property rights to the Properties. Thus far, Defendant has filed notices of federal tax liens on the Properties. Doc. 28, Amended Complaint, at 3:22-24; Doc. 33, Answer, at 2:11-2. According to Plaintiffs, they currently lease out the Properties, receiving a total $7,050 per month in rent payments. Doc. 75, Plaintiffs' Opposition, at 4:2-5:1, 8:23-26. There is no indication that the Defendant has either sought to levy on the Properties or attempted to seize the rental revenues. Plaintiffs have an interest in clarifying their property rights, but face relatively limited prejudice from a six month delay as the tax liens do not appear to be interfering with Plaintiffs' actual use of the Properties. Plaintiffs' property interests are only lightly impacted by a six month stay.

Plaintiffs do not directly address the issue of Plaintiff Ioane's Fifth Amendment Rights. Instead, they say "as far as what protection Ioane may invoke, the government is well aware that making such a claim would jeopardize Ioane's case which could result in terminating sanctions." Doc. 45, Plaintiffs' Opposition, at 3:3-5. Plaintiffs do not state that his right against self-incrimination would not be threatened by this case. The court concludes that Plaintiff Ioane's

Fifth Amendment rights may very well be impacted by allowing the case to go forward.

With regards to a limited stay, disallowing discovery would not infringe on Plaintiffs' interests at all. Plaintiffs have declared they "really have no need for discovery in this matter." Doc. 45, Plaintiffs' Opposition, at 11:7-8. Proceeding directly to summary judgment allows an earlier determination of Plaintiffs' rights with regards to the Properties. Plaintiff Ioane would not be forced to make an election between his interests in this case and his Fifth Amendment rights.

**B. Defendant's Interests**[2]

Defendant brought the motion for a stay and granting one would not burden Defendant at all. Similarly, granting a limited stay would not appear to unduly impact the Defendant's interests in this case. Defendant stated "Should the civil discovery continue, the United States would likely seek to take [the Booths'] depositions as well as the depositions of others who may be targets of the criminal investigation." Doc. 70, Part 2, Defendant's Brief, at 8:16-19.

Defendant does state "should the United States be forced to proceed with the instant civil action, the civil attorneys will be at a distinct disadvantage, because the civil attorneys will lack access to the criminal files that are part of the grand jury investigation, or which have been sealed by the Court." Doc. 70, Part 2, Defendant's Brief, at 8:12-14. Defendant is presuming it is absolutely entitled to use the contents of the criminal files in defending this civil case. That is a faulty assumption. Defendant would not be disadvantaged relative to Plaintiffs which is the relevant perspective; lack of access to certain evidence would be a factor which should equally disadvantage both sides in this situation. As the Northern District has stated, "If the prosecutors and government civil defendant are somehow barred from collaborating, then the defendant here will simply have to conduct its own discovery, like every other civil defendant must do. In other words, the government defendant does not have a special right to the prosecutor's discovery or to

---

[2] The court considers Defendant United States's interests to consist solely of their position in this civil case. The administration of the criminal justice system is addressed as a component of the public's interest.

the information used by a grand jury. Any additional discovery obtained through a parallel criminal proceeding is a windfall, not an entitlement." <u>Belford Strategic Inv. Fund, LLC v. United States</u>, 2005 U.S. Dist. LEXIS 45219, *7 (N.D. Cal. Nov. 7, 2005).  Defendant has made no strong argument of special prejudice to its position in the civil case should the limited stay be granted.

**C. Court Efficiency**

Defendant claims a stay would conserve the court's resources as "the criminal case will shed light on the claims herein, refocus the parties on what factually remains in dispute and narrow the issues for adjudication. A stay will also likely negate the need for two courts to hear discovery disputes regarding witnesses and testimonial privileges and rights." Doc. 70, Part 2, Defendant's Brief, at 8:24-27.  Alternatively, skipping discovery and proceeding directly to summary judgment would avoid all the disputes associated with discovery.  Either stay would further the conservation of court resources, but the concern carries relatively little weight at this juncture.

**D. Third Party Interests**

Plaintiffs assert "whatever some non party person may do is of no consequence to this action." Doc. 75, Plaintiffs' Opposition, at 3:2-3.  Nevertheless, Ninth Circuit precedence compels consideration of third party interests.  With discovery, the Booths may be deposed and they may assert their Fifth Amendment rights.  At this point, that outcome is speculative as there has been no statement by the Booths to that effect.  This factor only weakly supports both forms of stay.

**E. Public Interests**

The public has a strong interest in a well functioning criminal justice system.  "The very

fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. Tex. 1962). "A criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the Government's witnesses before they have testified. In a civil case, by contrast, a party is entitled as a general matter to discovery of any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence. The Government contends Degen might use the rules of civil discovery in the forfeiture suit to gain an improper advantage in the criminal matter, prying into the prosecution's case in a manner not otherwise permitted. These problems are not uncommon when criminal and civil forfeiture suits are pending at the same time....the risk of compromising the criminal case could be avoided by staying the civil suit until the prosecution is over." Degen v. United States, 517 U.S. 820, 825-26 (1996), citations omitted, superceded on other grounds at 28 U.S.C. §2466(a).

Discovery in this case and any related criminal matter would likely cover the same substantive material. "If the Court permits the case to proceed, the petitioners will be able to use discovery devices in the Federal Rules of Civil Procedure to possibly require the United States to disclose information and documents concerning the specifics of that ongoing investigation, including the identities of actual and potential witnesses, the evidence they provided, and any analyses of that evidence conducted by agents working with the grand jury." Doc. 70, Part 2, Defendant's Brief, at 8:5-9. Allowing the civil matter to proceed using the Federal Rules of Civil Procedure would likely interfere with the potential criminal case(s). This factor weighs strongly in favor of staying the entire case.

A limited stay, proceeding straight to summary judgment would not mitigate all concerns

that the quiet title suit would interfere with the criminal process.  Defendant states "[t]he steps the United States would be required to take to respond to a summary judgment motion would likely force disclosure of information that could interfere with the criminal investigation."  Doc. 79, Defendant's Reply, at 5:4-6.  The court understands Defendant to claim that material which a prosecutor is not obliged to provide to a criminal defendant would have to be produced to defend against a summary judgment motion in this case.  As a general matter, "[t]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." Belford Strategic Inv. Fund, LLC v. United States, 2005 U.S. Dist. LEXIS 45219, *7 (N.D. Cal. Nov. 7, 2005), quoting Maloney v Gordon, 328 F Supp 2d 508, 513 (D. Del 2004).  This factor weighs against the limited stay.

**F. Conclusion**

In this case, the Plaintiffs' interests are mixed with regards to a stay of the case.  While their property rights would be clarified, Plaintiff Ioane's Fifth Amendment rights may be burdened.  In contrast, the public interest weighs strongly in favor of a stay.  The other factors are of little weight.  Under this calculation, a stay of the case is clearly warranted.

In the alternative, the limited stay would function to further Plaintiffs' property interests and obviate any election between pursuing this quiet title action and Plaintiff Ioane's Fifth Amendment rights.  But the public's interest in the administration of criminal justice weighs against this form of stay.  Given the fact that Plaintiffs' property interests appear to be only lightly burdened, the public's interest is of paramount importance.  Comparing the two proposals, the full stay of the case better satisfies the concerns outlined in Molinaro.

However, given the fact that there has been no indictment, the stay must be limited in duration and subject to reevaluation at the end of six months.  As the Ninth Circuit has pointed out, the rationale for a stay is far weaker in the absence of an indictment. Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 903 (9th Cir. 1989).  Without it, Plaintiffs rightfully state

that Defendant can not "endlessly cloud title to the Plaintiffs' property." Doc. 45, Plaintiffs' Opposition, at 3:8-9.

### IV. Order

Defendant United States' motion for stay is GRANTED.  This case is stayed through November 6, 2008.  Not later than fourteen (14) days before the stay expires, Defendant United States is directed to file a written status report regarding related criminal matters.  A status conference is set in this case for November 17, 2008 at 1:30 PM.

IT IS SO ORDERED.

**Dated:    May 6, 2008**               /s/ Anthony W. Ishii
                                        UNITED STATES DISTRICT JUDGE