IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACACIA CORPORATE MANAGEMENT, LLC, MICHAEL IOANE,<br><br>           Plaintiffs,<br><br>    v.<br><br>UNITED STATES, et al.,<br><br>           Defendants. | CIV F-07-1129 AWI GSA<br><br>ORDER RE: MOTION FOR SUMMARY JUDGMENT<br><br>(Docs. 149 and 155) |

**I. History**

Vincent Steven and Louise Q. Booth ("Booths") are a married couple who file joint tax returns. The Booths owned three parcels of property (the "Subject Properties") in Bakersfield, CA. The Booths met Plaintiff Michael Scott Ioane ("Ioane") and began taking his advice on how to reduce/evade their income tax liabilities. In 1996, the Booths transferred ownership of the Subject Properties to the Alpha Omega Trust and the Aligned Enterprises Trust; in 2002, they transferred ownership of the Subject Properties to the Bakersfield Properties and Trust Company (all three entities collectively the "Booth Trusts"). The beneficiaries of the Booth Trusts are the Booths' children.

In 1999, Defendant United States ("United States") made tax assessments against the Booths for deficiencies in the tax years 1995-1997. The United States filed a tax lien in Kern County against the Booths ("2000 Tax Lien"). On December 5, 2005, the Booth Trusts transferred ownership of the Subject Properties to Plaintiff Acacia Corporate Management, LLC ("Acacia") and Ioane, in an alleged attempt to put it out of the reach of the United States. On

December 22, 2005, the United States filed a tax lien on the Subject Properties specifically ("2005 Tax Lien") on the basis that Ioane and Acacia (collectively "Ioane Group") are nominees/alter egos of the Booths.

 On August 3, 2007, the Ioane Group filed this suit against the United States, the Booths, and the Booth Trusts, seeking to quiet title to the Subject Properties. Doc. 1. The Ioane Group then reached a "Quiet Title Pursuant to Binding Stipulated Settlement and Agreement Between the Parties Herein" ("Stipulated Settlement"), which the court approved. Doc. 10. In the Stipulated Settlement, the Ioane Group and the Booths agreed that the Subject Properties belonged to the Ioane Group and that the Subject Properties were not subject to any government liens at the time they were transferred. The United States was not a party to the Stipulated Settlement. The Ioane Group made a motion for final judgment based on the Stipulated Settlement; it was denied. Doc. 64. The Ioane Group then voluntarily dismissed all claims against the Booths and the Booth Trusts. Doc. 66. The only remaining parties in the case are the Ioane Group (plaintiffs) and the United States (defendant). This case was stayed pending related criminal proceedings.

 On April 9, 2009, a grand jury in Sacramento indicted the Booths and Ioane on various criminal charges related to tax evasion (Criminal Case No. 09-0142 LJO). In the criminal case, the Booths reached a plea bargain with the United States: Steven Booth plead guilty to one count of conspiracy to defraud the United States, all other charges against him and Louise Booth were dismissed. The Booths cooperated with the United States's criminal prosecution of Ioane; Steven Booth testified against Ioane at his trial. On October 3, 2011, a jury found Ioane guilty of conspiracy to defraud the United States and presenting fictitious obligations intended to defraud on October 3, 2011. The stay in the present case was lifted on January 11, 2012. Doc. 129. Ioane has appealed the conviction, and the Ninth Circuit has indicated that there is "a 'substantial question' of law or fact that is 'fairly debatable,' and that 'if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an

order for a new trial of all counts on which imprisonment has been imposed.'"  The appeal is ongoing.  The present case is only one of several civil suits dealing with the event surrounding the Booths' tax evasion and alleged attempts to shield the Subject Properties from the United States's reach. Civ. Case Nos. 07-0620, 09-1689, and 12-0171.  A motion to consolidate these cases was denied. Doc. 140.

The court ruled that the Stipulated Settlement was ineffective against the United States. Doc. 148.  The Ioane Group made a motion to clarify, asking the court to specify the effect of the prior ruling. Doc. 149.  The United States opposes the motion. Doc. 151.  The Ioane Group then made a motion for summary judgment. Doc. 155.  The United States opposes the motion, in part by seeking to dismiss the case for failing to join necessary parties. Doc. 160.  Instead of filing a timely reply, the Ioane Group made a motion to stay the case. Doc. 162.  Magistrate Judge Austin denied the motion. Doc. 170.  The Ioane Group filed a late reply, in part to respond to the United States's request for dismissal. Doc. 167.  The United States's request for dismissal was not noticed and does not comply with Local Rule 230.  The court will not entertain the United States's improper motion.  The Ioane Group's reply will not be considered.

**II. Legal Standards**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby,

3

Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference

may be drawn. See <u>Juell v. Forest Pharms., Inc.</u>, 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); <u>UMG Recordings, Inc. v. Sinnott</u>, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." <u>Del Carmen Guadalupe v. Agosto</u>, 299 F.3d 15, 23 (1st Cir. 2002); see <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 658 (9th Cir. 2007); <u>Bryant v. Adventist Health System/West</u>, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or 'is not significantly probative.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Hardage v. CBS Broad. Inc.</u>, 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See <u>Southern Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003). If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies</u>, 210 F.3d 1099, 1103 (9th Cir. 2000).

### III. Statement of Material Facts

1. On December 5, 2005 Acacia Corporate Management Purchased three parcels of real property from Bakersfield Properties and Trust Company for $900,000.

    Disputed.

2. In 1996 Dr. Vincent Booth and Louise Booth transferred their interest in the subject properties to Alpha Omega Trust and Aligned Enterprises Trust. In 2000 they removed themselves as trustees of the Trust and appointed third parties. In 2002 all 2000 transfers were recorded with the Bakersfield County Recorder.

    Disputed.

3. There were no IRS tax liens on the 3 parcels of land by the United States on December 5, 2005.

    Disputed.

4. Dr. Vincent Steven Booth and Louise Booth had no interest in Bakersfield Properties and Trust Company.

    Disputed.

5. The beneficiaries of the Bakersfield Properties and Trust Company are the minor children of the Booths: Matthew Booth, Samuel Booth, Grace Booth, and William Booth.

    Disputed.

6. Acacia Corporate Management LLC is a Nevada LLC and the Booths have no interest in it. The Booths paid rent of $2,000 a month for their personal residence.

    Disputed.

7. In 2007 the Booths entered into a court approved Stipulation with Plaintiffs to Quiet Title. No objection was made until 5 years later by United States when they moved for reconsideration. Their motion was denied.

    Disputed.

## IV. Discussion

Magistrate Judge Austin stated that "The only claim properly before the Court is a quiet title action, concerning whether the United States' federal tax liens against [the Booths] attach to

[the Subject Properties]. Plaintiffs contend that both Michael Ioane and Acacia LLC have an ownership interest in the subject properties and that neither Acacia LLC nor Ioane is the alter-ego/nominee of the Booths....Plaintiffs further contend that the Booths have no beneficial interest in the subject properties and that no fraudulent transfer of the subject properties occurred....The United States further contends that the Booths are the beneficial owners of the subject properties and that [Acacia] holds only bare legal title to the subject properties. Acacia LLC is a nominee, alter-ego, and/or fraudulent transferee of the Booths." Doc. 68, Scheduling Order, 2:9-24. The court finds this to be a fair summation of all the live issues in this case.

**A. Stipulated Settlement**

The Ioane Group seeks to use the Stipulated Settlement to establish their ownership in the Properties. In the prior order, the court stated, "The Stipulated Settlement was not given full effect since the Ioane Group voluntarily dismissed the Booths from the case without obtaining a final judgment against them....Notwithstanding the fact that the court approved the Stipulated Settlement, it was not given effect in this case because the Ioane Group abandoned its claims against the Booths. In that sense, there is no binding order to be reconsidered. To clarify, the Stipulated Settlement is ineffective and certainly does not bind the United States in any way." Doc. 148, July 17, 2012 Order, 3:22-23 and 4:8-11. The Ioane Group now argues that "The Booth defendants herein have already entered into a Stipulated Agreement which was approved by the Court in 2007, quieting the title, which is now the law of the case." Doc. 155, Brief, 4:17-20. That assertion is completely incorrect as the plain language of the July 17, 2012 Order clearly indicates. The Ioane Group cites to three cases for the proposition that settlement agreements are binding upon the parties, but the opinions reference final judgments and inapplicable California rules of civil procedure. See Iorio v. Allianz Life Ins. Co. of N. Am., Inc., 2011 U.S. Dist. LEXIS 21824, *2 (S.D. Cal. Mar. 3, 2011) ("final order" approving class action settlement); Connecticut Gen. Life Ins. Co., Litig. v. Connecticut, 1997 U.S. Dist. LEXIS 23955,


*3 (C.D. Cal. Feb. 11, 1997) ("Final Order and Judgment" approving class action settlement); In re Marriage of Assemi, 7 Cal. 4th 896, 905 (Cal. 1994) (discussing Cal. Code Civ. Proc. § 664.6).  The Ioane Group also asserts that "judicial decrees disposing of issues in active litigation cannot be treated as idle ceremonies without denigrating the judicial process" without noting that the opinion from which this language is drawn from included the critical caveat that "absent the evidence of collusion, judicial decrees disposing of issues..." Wallace Clark & Co. v. Acheson Industries, Inc., 532 F.2d 846, 849 (2nd Cir. 1976).  As stated before, this court explicitly denied the Ioane Group's Fed. Rule Civ. Proc. 54(b) motion for final judgment under against the Booths based on the Stipulated Settlement.  Doc. 64.  Instead of completing the litigation on this issue, the Ioane Group then dismissed its claims against the Booths without prejudice.  Doc. 66.  The Booths have stated that agreeing to the Stipulated Settlement was part of their scheme to shield the Subject Properties from the IRS.  The sequence of events in the case is consonant with this admission.  Under these circumstances, the Stipulated Settlement has no effect.

**B. Tax Liens**

The Ioane Group asserts that "[Acacia] purchased three pieces of Property from Bakersfield Properties and Trust Company, on December 5, 2005.  At [that] time there were no liens on the property by the IRS." Doc. 155, Brief, 2:8-11.  The United States disagrees, referring to the 2000 Tax Lien.  Doc. 160, Opposition, 6:2-9 and 13:6-10.  The United States filed a "Notice of Federal Tax Lien" with the County Recorder of Kern County, against the Booths for the amount of $1,855,733.72 on March 15, 2000, specifying that the lien applied to "all property and rights to property belonging to this taxpayer." Doc. 160, Part 7, Ex. 6.  Title 26 U.S.C. § 6321 does state that a federal tax lien applies to "all property and rights to property, whether real or personal, belonging to such person."  The Booths transferred the Subject Properties to the Booth Trusts in 1996.  The United States asserts that the 2000 Tax Lien attached to the Subject Properties as the Booth Trusts were sham trusts.  Doc. 160, Opposition, 12:3-12.  The United

States does not raise the issue of the 2005 Tax Lien.

**C. Fraudulent Transfer**

The United States argues the 1996 transfer of the Subject Properties from the Booths to the Booth Trusts were fraudulent. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a).

The Ninth Circuit has specifically held that "a debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under...California Civil Code § 3439.04(a)(1), and precludes relitigation of that issue." Santa Barbara Capital Mgmt. v. Neilson, 525 F.3d 805, 814 (9th Cir. 2008) (criminal plea agreement admissible to establish intent to defraud in bankruptcy proceeding). In the criminal case, Steven Booth plead guilty on July 30, 2010 to one count of conspiracy to defraud the United States, 18 U.S.C. § 371. Crim. Case. No. 09-0142 LJO, Doc. 78. He specifically plead guilty to conspiring "to defraud the United States and the agency thereof by willfully attempting to evade or defeat any income tax or the payment thereof due in payable to the internal revenue service." Crim. Case. No. 09-0142 LJO, Doc. 80, Transcript, 8:20-23. Steven Booth also provided a declaration that states he and his wife transferred the Subject Properties to the Booth Trusts in 1996 for "no consideration" with design to "distance the property from any collection efforts by the Internal Revenue Service." Doc. 160, Part 2, Ex. 1, April 27, 2012 Steven Booth Declaration, 2:19-3:26.

These representations are at odds with the Booths' representation in the Stipulated Settlement and the Ioane Group argues that "Steven Booth feared that the United States would

9

somehow be able to throw his wife Louise Booth in jail and so he made an agreement with the United States where he agreed to essentially say anything they want if he and his wife could avoid going to jail, true or not he was saying whatever the United States wanted." Doc. 167, Reply, 6:11-16. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), citations omitted.  In this case, Steven Booth's evidence is not just a simple affidavit but a guilty plea to a criminal charge plus detailed testimony at Ioane's trial. See, e.g., Doc. 160, Part 3, Ex. 2, Transcript, 109:9-21.  Further, his statements are not the only evidence that raises material questions of fact in this case.

In evaluating potential fraudulent transfers more generally,

consideration may be given, among other factors, to any or all of the following:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code §3439.04(b).  As stated above, Steven Booth asserts the transfers to the Booth

Trusts were for "no consideration," which speaks to factor eight. Doc. 160, Part 2, Ex. 1, April 27, 2012 Steven Booth Declaration, 2:19-3:26. The Booths failed to pay their income taxes starting in 1996 (for tax year 1995). The transfers took place in 1996, which implicates factor ten. At the time of the transfer, the Booths were the trustees of the Booth Trusts, which is relevant for factors one and two. Doc. 160, Part 2, Ex. 1, April 27, 2012 Steven Booth Declaration, 2:19-3:26. This evidence is sufficient to defeat the Ioane Group's motion for summary judgment by raising the possibility that the transfer of the Subject Properties to the Booth Trusts in 1996 were fraudulent, which would mean the 2000 Tax Lien attaches.

### IV. Order

The Ioane Group's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:   January 4, 2013

_____
UNITED STATES DISTRICT JUDGE

11